IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GLOBAL PAYMENTS DIRECT, INC., | : |
| | : |
| Plaintiff, | : |
| | : CIVIL ACTION NO. |
| v. | : 1:05-CV-0747-JOF |
| | : |
| AMERICAN BANK OF COMMERCE, | : |
| | : |
| Defendant. | : |

**OPINION AND ORDER**

This matter is before the court on Defendant's motion to dismiss [4-1 and 6-1].

**I.   Background**

   **A.   Procedural History**

Plaintiff, Global Payments Direct, Inc., filed suit against Defendant American Bank of Commerce ("ABC") in the State Court of DeKalb County alleging breach of contract and also seeking attorney's fees. Defendant removed the suit to this court based on diversity of citizenship and filed the instant motions to dismiss for lack of personal jurisdiction.[1]

---

[1] While two motions to dismiss appear on the court's docket, a review of those two motions shows they are identical, and the court treats them as one.

Global is a New York corporation with its principal place of business in Atlanta, Georgia. It also has offices in several other states, including Texas, Maryland, Missouri, and Illinois. ABC is a Texas corporation with its principal place of business in Texas. On October 12, 1999, Global and ABC entered into a Correspondent Depositary and Processing Agreement whereby ABC was to refer merchants to Global for credit card processing services. In return for doing so, ABC would receive a percentage of the credit card transactions processed by Global for those merchants. If any of the referred merchants defaulted their obligations to Global, ABC agreed to compensate Global for any losses resulting from the default. ABC referred more than 70 merchants to Global under the Correspondent Agreement.

One such merchant referred to Global by ABC was Warranty Gold, Ltd. Global required that ABC provide additional assurances to Global that Warranty Gold would not default. In conjunction with that on March 18, 2000, ABC and Global entered into a separate Indemnification Agreement so that Global would agree to process credit card transactions for Warranty Gold. ABC agreed to "indemnify and hold harmless [Global] against any and all losses under the merchant agreement" with Warranty Gold. Under Count I of its complaint, Global asserts that ABC breached both the Correspondent Agreement and the Indemnification Agreement which "require ABC to indemnify Global for any losses suffered as a result of the Warranty Gold credit card processing relationship." Cmplt., ¶ 12. Under Count II, Global seeks attorney's fees as permitted under the Correspondent Agreement.

### B.     Jurisdictional Facts

Mr. E. Powell Thompson, Senior Executive Vice-President, Director, and Austin President of ABC, testified that ABC has no offices in Georgia, and none of its employees is located there. *See* Thompson Aff., ¶ 3. ABC has not entered into any contracts in Georgia and has not transacted any business there. *Id.*, ¶ 4. ABC executed the Correspondent Agreement and the Indemnification Agreement in Texas. *Id.*, ¶ 5. None of the merchants referred by ABC to Global is located in Georgia, including Warranty Gold, which is located in Texas. *Id.*, ¶ 6. All of ABC's contacts with Global were at Global's Austin, Texas office. *Id.*, ¶ 7. Negotiations for both contracts also took place in Texas. *See* Thompson Depo., at 12. In discussing merchant references, contact occurred only between ABC's Texas employees and Global's Texas employees. *See id.* at 19-21, 28.

The Correspondent Agreement contains a choice of law provision providing for the application of Georgia law. *Id.*, § 9.05. All notices under the Correspondent Agreement are to be sent to Global at an Atlanta, Georgia address. *Id.*, § 9.02. The Agreement also defines "business day" as one in which banking institutions in either Georgia or Texas are open. *Id.*, § 1.01. The Correspondent Agreement does not contain a forum selection clause. The Indemnification Agreement contains neither a choice of law provision nor a forum selection clause.

### C.     Contentions

ABC contends that the court cannot exercise personal jurisdiction over it because it lacks sufficient minimum contacts with Georgia. Specifically, ABC argues that it communicated only with Global's employees in Texas to negotiate the contracts and did not have contact with any of Global's employees in Georgia. ABC only contacted Global in Georgia once the dispute about the Indemnification Agreement arose. None of the merchants referred to Global by ABC is located in Georgia.

In its complaint, Global contends that the court has both general and specific jurisdiction over ABC. Primarily, Global asserts that ABC knew it could be haled into Georgia courts because the merchant agreement signed between Global and Warranty Gold provides that it will be construed according to the laws of Georgia and that any lawsuit brought under the merchant agreement would be filed in the courts of DeKalb County, Georgia. Global also argues that it would not have entered into a merchant agreement with Warranty Gold but for ABC's indemnification.

## II.   Discussion

In *Carekeeper Software Development Co. v. Silver*, 46 F. Supp. 2d 1366 (N.D. Ga. 1999) (Forrester, J.), this court reviewed the requirements for exercising personal jurisdiction. Noting first that a federal court must have both statutory and constitutional authority to assert jurisdiction over a defendant, the court determined that Georgia's long-arm statute is coterminous with constitutional due process, thus, limiting the jurisdictional inquiry

4

to constitutional issues. *Id.* at 1369.[2] The court considers two factors when determining if asserting personal jurisdiction over nonresident defendants would comport with due process: (1) whether the nonresident defendant has purposefully established minimum contacts with the forum and (2) whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *Id.* (citing *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)).

To establish general jurisdiction, a plaintiff has to show that the general contacts a defendant has with the forum state are continuous and systemic. *See Helicopteros Nacionales de Columbia v. Hall*, 366 U.S. 408, 414-16 (1984) (citing *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952)). *See also Nippon Credit Bank, Ltd. v. Matthews*, 291 F.3d 738, 747 (11th Cir. 2002) (considering whether corporation was licensed to do business or maintained offices or employees in forum state, as well as whether corporation solicited business or sold products in the state). Based on the jurisdictional facts outlined above, it is clear to the court that Global has proffered no evidence to show that ABC has continuous and systemic contacts with Georgia.

---

[2]The court recognizes that there is lingering doubt as to whether Georgia's long-arm statute has the same parameters as due process under the United States Constitution. However, the Georgia Supreme Court recently put the issue to rest in ruling that the scope of the long-arm statute is coterminous with due process, at least with respect to the "transacts any business" subsection of O.C.G.A. § 9-10-91. *See Innovative Clinical & Consulting Services, LLC v. First National Bank of Ames*, ___ Ga. ___ (2005), 2005 WL 2411673 (Oct. 3, 2005).

AO 72A
(Rev.8/82)

To satisfy minimum contacts for the purposes of specific jurisdiction, the contacts must (1) be related to plaintiff's cause of action; (2) involve some act of "purposeful availment" by the defendant of the privileges of the forum; and (3) be such that the defendant should reasonably anticipate being "haled into court there." *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 627 (11th Cir. 1994).

The Supreme Court of Georgia's most recent statement of the scope of its long-arm statute makes clear that under O.C.G.A. § 9-10-91(1), a court can exercise personal jurisdiction over a defendant who "transacts business" in the state of Georgia. *See Innovative Clinical & Consulting Services, LLC v. First National Bank of Ames*, ___ Ga. ___ (2005), 2005 WL 2411673 (Oct. 3, 2005). The physical presence of the defendant in Georgia is not required. *Id*. Further, the court should not minimize the "intangible contacts" of the defendant with the forum state. *Id.* In *Innovative Clinical*, the Georgia Supreme Court remanded the case for the trial court to determine whether it had personal jurisdiction considering the postal and telephonic contacts between the defendant and the forum state. *Id.*

Unlike the defendant in *Innovative Clinical*, however, ABC, here, has had no contact with the Georgia forum, physical or intangible. It is true that the company with which ABC did business also has an office in Georgia, but ABC undertook no communications of any significance with that office during the course of the relationship with the parties. The cases cited by Global are distinguishable on this basis. *See Robertson v. CRI, Inc.*, 267 Ga. App. 757 (2004) (where guarantor traveled to Georgia on several occasions regarding loan and

6

principal debtor was located in Georgia, court exercised personal jurisdiction over guarantor); *Drennan v. First Home Savings Bank*, 204 Ga. App. 714 (1992) (where loan used to finance hotel in Georgia, borrower registered to do business in Georgia, guarantors started Georgia business and visited motel site during its construction, court properly exercised personal jurisdiction); *White House, Inc. v. Winkler*, 202 Ga. App. 603 (1992) (court exercised personal jurisdiction where defendant initiated contact and engaged in negotiations with plaintiff's representatives in Georgia).

None of the arguments raised by Global in favor of jurisdiction in Georgia relates at all to whether Global has minimum contacts with Georgia. For example, the fact that the merchant agreement signed between Global and Warranty Gold has a forum selection clause for DeKalb County, Georgia, is irrelevant to the present issue. ABC is not a party to that contract and the forum selection clause contained therein cannot be imputed to ABC. Similarly, the fact that Global would not agree to a merchant agreement with Warranty Gold unless ABC indemnified Global is also irrelevant to a jurisdictional analysis, particularly where the Indemnification Agreement was negotiated and executed in Texas and contains no choice of law or forum selection clause that would point to Georgia.

Although the Correspondent Agreement contains a choice of law provision for Georgia law, that, alone, is not sufficient to establish personal jurisdiction over ABC. *See HTL Sp. ZOO v. Nissho Corp.*, 245 Ga. App. 625, 627 (2000). Nor does the fact that Global received notices under the Correspondent Agreement at its Atlanta address or that the definition of

7

"business days" refers to Georgia say anything with respect to ABC's purposeful availment of the Georgia forum.

Global does argue that (1) ABC knowingly entered into a contract with a corporation headquartered in Georgia, (2) ABC received more than $175,000 in commissions from Global, and (3) the reports setting forth the amount of commissions ABC would receive were generated in Global's Atlanta office. The facts, however, show that all of ABC's contacts with Global occurred at Global's Texas offices, so there is no evidence to show that ABC purposefully availed itself of the Georgia forum despite the fact that Global headquarters in Atlanta handled some of the payments and paperwork under the contract. That ABC received $175,000 in commissions and received written reports from Global's Atlanta office is not sufficient to establish that ABC initiated or directed any activity to the Georgia forum. ABC had no contacts with Georgia in the course of establishing the contracts. ABC had no contact with any employee in Global's Georgia office until after a dispute arose with respect to the Indemnification Agreement.

Because ABC did not purposefully avail itself of the Georgia forum with respect to the Correspondent Agreement and Indemnification Agreement, the court finds that ABC does not have minimum contacts with Georgia such that it could have anticipated being haled into court here.[3] Therefore, the court GRANTS Defendant's motions to dismiss [4-1 and 6-1].

---

[3] Because Plaintiff has not established minimum contacts, the court need not consider whether the exercise of personal jurisdiction would offend the "traditional conception of fair

### III. Conclusion

The court GRANTS Defendant's motion to dismiss [4-1 and 6-1]. The Clerk of the Court is DIRECTED to DISMISS WITHOUT PREJUDICE Plaintiff's complaint.

**IT IS SO ORDERED** this 31st day of January 2006.


                                    s/ J. Owen Forrester
                                    J. OWEN FORRESTER
                                    SENIOR UNITED STATES DISTRICT JUDGE

---

play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945).